This is No. 4, 1022 O'Neill v. Sandone for the appellant, Mr. Graham, and for the appellee, Mr. Hobbs. You may proceed. Good morning, Your Honors. May it please the Court, my name is William Graham. I'm appearing on behalf of Randy Sandone and Mary Sandone in their appeal. The appellant seek review of two orders from the lower court, the grant of dismissal of counterclaims in affirmative defenses on March 9, 2010, and the Court's grant of summary judgment to plaintiffs on November 23, 2010. I'm aware that the Court has read all of the briefs and I won't belabor the facts unless the Court wishes me to elaborate on it. Hearing nothing, I'll move on to the arguments. It's the appellant's position that the grant of summary judgment was error in this case, essentially for one reason, Your Honor. In the contract, there was a note that was made for the benefit of Argus. It was signed by the defendants. This contract included an implied term that there would be no interference with the performance of the contract. In this case, there is evidence that there was interference with the performance of the contract in that the plaintiff orchestrated the dismissal of both of the defendants. And not only that, arranged and orchestrated that they would not receive their contractual benefits from dismissal or their earned income as of that point in time. It's inescapable that those acts were in fact an interference with the terms of the contract. They could not, that is the Sandones, could not repay this contract without those funds. And in fact, at the time that they signed it, they explicitly said to Mr. O'Neill, we won't be able to repay this if we don't get our money back from Argus. You have to understand that. And there was nothing further said about it, but there was an understanding that it would not be paid. After that point in time, then Mr. O'Neill took the affirmative act of eliminating their ability to pay. There was contractual interference. There was evidence of contractual interference in the lower court. It was error for the lower court to not at least provide the opportunity to go to trial on that issue. There was no, nothing put forward to dispute the fact that there was interference. There was an affidavit put forward that there was interference. For the lower court to say that you would need to put non-interference in the contract to make it a condition precedent, there's no support for that. And in fact, in my brief, you'll see there's a long list of cases that support the fact that there is a history of an implied term of non-interference in every contract. On those grounds, we would say that the lower court erred in granting summary disposition in favor of the plaintiffs in the matter. In addition to that, the defendants assert that dismissal of the counterclaims and affirmative defenses in the earlier order was also error. In particular, the court applied the doctrine of res judicata to bar the counterclaims. Res judicata is not applicable to the posture of this case. This case had gone to the appellate court and had come back down. It had never achieved a final disposition. And the case law is very clear that res judicata, to be applicable, requires that you're applying the ruling, the final judgment of a prior case. There was no final judgment in this case. Given that res judicata was inapplicable, the only applicable doctrine of issue preclusion would have been the law of the case doctrine. The law of the case doctrine, however, requires that the issues that were previously decided in the same case had to be the exact same issues and the exact same parties. In this case, the counterclaims that were asserted later in the case were not the exact same claims or the exact same parties. The claims later asserted were based upon the Wage Payment and Collection Act. These were different from the prior claims that were asserted by Mr. Sandone in his own case, which were interference with contract. They may sound similar, but they're different theories. And they should have been given an opportunity for exploration on their own merits. In the prior case, there was only one plaintiff. That was Mr. Sandone that went to the appellate court. Mary Sandone was not a party to that action. So under the law of the case doctrine, neither of their claims should have been dismissed. They weren't precluded by the law of the case doctrine. If the court has any questions regarding these arguments, that is my position. I don't believe so. Thank you. Thank you. Good morning. Good morning. Your honors, counsel, may it please the court. My name is Rick Iles. I represent William O'Neill in this cause. And I would like to address the court's entry first, the court's entry of summary judgment. I believe it was appropriate in this instance. The court, in entering summary judgment, did the only thing it could do with the case in front of it. This case, Mr. O'Neill's case, 04L272, involved a note. It was clear in its terms. It was a personal note signed by Mr. and Mrs. Sandone. That's not disputed. Now, they say, well, we were using it for the business, but Mr. O'Neill didn't want to loan money to the business. In fact, he was a director, probably didn't feel like he could. He wanted to loan money to the individuals. He was putting his trust in the Sandones to pay him back. He knew the business was in trouble. The Sandones knew it was a personal note. So they signed a note, and the court had in front of it a note clear in its terms with a payment date, that all principal and interest was to be paid by that date. It wasn't paid by the due date. An extension was entered into by the parties. It wasn't paid again by the due date. Demand was made, no payment. That's the case. There was no other ruling the court could enter on the case that was before it, a breach of a note. Now, the defendants argue, well, there was this implied term in the note, and it was a term that said that Mr. O'Neill would not interfere with the Sandones' performance under the note. But where it misses the mark is that the Sandones' performance under the note was simply the repayment of the note. And in essence, that's what the court held. The lower court said, what you're asking me to do is to insert a term in this clear document that nowhere within the four corners says that their obligation to repay was conditioned on their receiving money due to them from Argus. That's nowhere in the note, and the court refused to go that far. And I think that was the correct approach to take, because there simply is no term in this note that indicated that performance was by way of payment from funds received from Argus, as opposed to payment from any other mean or method. So because there was no condition precedent in the note, the court correctly found there wasn't, the court could not entertain that argument in a summary judgment on the note. The cases cited by counsel in his brief, Levi v. Hipple, Foreman State Bank v. Tobar, Hanson v. Johnson, Olson v. Scholl, Burroughs v. Macco, I've set forth my arguments in my brief, I won't belabor it, but in essence I believe they're all distinguishable, simply because they're either dealing with an actual condition that's expressed somewhere, or where one party made performance impossible on the part of the other party. Here, Mr. O'Neill demanded payment, was not making performance impossible. They could have paid from any number of sources of funds. He didn't care where the money came from, he just wanted to be paid. Summary judgment was also entered on Affirmative Defenses 2 and 3. The second affirmative defense raised by the defendants was the Clean Hands Doctrine. And I always understood the Clean Hands Doctrine as meaning, one who seeks equity must do equity. If you come into court seeking equity, you have to come into court with clean hands. But this is a legal claim, it's a claim on a note. Now I understand the distinction between courts of equity and courts of law is no more, but that doesn't mean that you can raise equitable defenses to actions that are purely actions at law. And the equitable defense the court found had no place in this case, because it was a case seeking money damages on a note. And in any event, I believe the court's order referenced the prior holding in O2L272 and this court's upholding the prior order as an indication that a clean hands defense wouldn't prevail anyway, because the actions of Mr. O'Neill were in furtherance of his business judgment and were appropriate in any event given the poor financial condition of the company at that time. And in fact, I would even argue that if Mr. O'Neill voted as a director of Argus to pay the Sandones before other creditors, he would have ended up putting his own interests in front of the company's. Because if he believed that the Sandones' only ability was to pay him from funds they got from Argus, he would have wanted to make sure they got funds. But he did what a good director does and put the company's interests first and foremost. The lower court had already held that in O2L272. This court affirmed that and then the court found that again in this case, O4L272. And addressing Estoppel, the lower court held that Estoppel wouldn't be a defense because the argument there is when the Sandones signed the note, they say they told Mr. O'Neill, well, we won't be able to pay you back unless we got paid and nothing further was said. Mr. O'Neill didn't say, I understand. He didn't say, that's okay, you don't have to pay me back if you don't get the money. He didn't say anything. And the court said, well, silence is nothing that I could find as a matter of law rises to the level of Estoppel. So for those reasons, I believe summary judgment was appropriate. Addressing the earlier dismissal under 2619, I had filed a motion to dismiss the counterclaims raised by the Sandones and a motion to dismiss all four affirmative defenses. The court dismissed affirmative defenses one and four, which were in essence parroting the counterclaims. And the court dismissed the counterclaims. And in doing so, the court felt that res judicata was the appropriate analysis. The court was very mindful of the history of this case. It's kind of a sorted procedural history. But the court was mindful of its decision, its determination in the prior case, what this court had done in addressing the issues of the business judgment rule, and found that with the claims that were alleged in the counterclaims, there's simply no way that the defendants were going to prevail on this because of the business judgment rule and the protection that afforded Mr. O'Neill and his actions. So the court found that res judicata did apply. And I'd like to address the two defendants separately if I could. First, as to Randall Sandone, that's obvious. We have a final judgment in 02L272. That's a case that he filed. He is now raising claims that in essence arise out of the same issues under the transactional analysis that the Peregrine Court recognized in its decision. The court looked at the facts that give rise to the cause of action and whether the claims arise from a single group of operative facts regardless of what legal theory is applied. And in looking at that analysis, it's clear that we're dealing in this case and Mr. O'Neill's conduct and as a board member voting to terminate any further payments to the Sandones. And certainly in Randall Sandone's case, we're dealing with the same parties. Now, when we get to Mary Sandone, that's a little different. I think res judicata is still the appropriate analysis. And the reason is this. Mary was not a party to 02L272. She was a defendant in 04L272. She was represented by the same attorney that represented her husband in 02L272. That attorney filed a motion to consolidate the two actions. In the motion, which is in the record and I refer to it in my brief, the attorney referenced that both the Sandones had wage claims to be brought against Mr. O'Neill. And he thought that consolidation would be the most expeditious manner of handling this litigation. So over plaintiff's objection, the cases were consolidated. So the consolidated action comes up to the appellate court. Arguments were heard. I had filed a motion, I think, to dismiss the appeal in that time frame once I took over the file for an attorney at my firm that had previously handled it. And then this court rendered its decision, an Indy decision, severed 04L272 and remanded back for further proceedings. So I think Mary Sandone was a party because when the case got as far as this court, it was still a consolidated action. She was a defendant and she was represented by the same attorney that was representing her husband. So her interests were protected. Her claims are basically the same claims that her husband brought. I was owed money. They didn't pay me. I should have been paid. Now, counsel argues, well, no, that wasn't, she wasn't a party. And there was no final judgment in this case. This is the same litigation. In other words, both cases are one litigation. And so he argues that because there wasn't a final judgment, the only analysis is law of the case. If you look at the law of the case analysis then, he's arguing that this is really a subsequent stage of the litigation, but Mary's not a party. My question is, well, if this is the same case, if it's the same litigation, if there was no final judgment for res judicata purposes, then Mary has to be a party for law of the case purposes because it's the same case. So I think as choosing between the two, I think the appropriate analysis is res judicata as the lower court found, simply because she was a party to the case when it was consolidated and had made its way all the way to this court. And ultimately, the issue is going to come down to the actions of Mr. O'Neill in voting to terminate any further payments. No matter how they raise the legal issues, no matter what label they stick on it, the business judgment rule is going to protect Mr. O'Neill. And whether the court wants to uphold the lower court on the res judicata grounds or actually determine that it was law of the case or just conduct a de novo review and say, you know, she's not going to win anyway, we ultimately get to the same point. So for those reasons, I think the lower court should be upheld on all issues. I'd be happy to take any questions that you have. I don't believe so. Thank you. Thank you. We've got almost a minute. Counsel brings up a number of interesting issues that I want to touch on. First of all, he raises the business judgment rule. And I think that's important, because to the extent that the court did rely upon the business judgment rule, then that is further grounds for error. The business judgment rule protects a party acting as an officer for his official duties. This case concerns a private note executed between private individuals. There's no application of the business judgment rule anywhere in this action. The upheld court did determine that in an action as to the actions of officers that it did apply. And while we respectfully disagree, we can't do much about that now. But to the extent that the court tried to apply the business judgment rule to a purely private matter, that was pure error. Furthermore, counsel touches upon, I think, a fundamental misunderstanding of the lower court, which was that the judge did not understand that the actions asserted, the interference with contract, were not merely equitable defenses. They were a defense to the contract. The cases show that interference is a term of the contract, non-interference rather. Non-interference is a term of the contract, an implied term. So the defense to that violation of the term of non-interference isn't an equitable defense. It's a contract defense. And that's something that the lower court should have recognized. Finally, as to the issue of res judicata, counsel's suggestion that we need to decide which theory works best for Mary Sandone, it's an incorrect statement that her claims were somehow decided in the appellate court. They were not. The claims of Randall Sandone were decided. They were the only claims that were decided. To imply that Mary's were is just a misstatement of law. And there was no final judgment. So the only applicable doctrine is the law of the case. And she was not a party in that case, and her claims should have not been barred. And if the court has anything further. I don't believe so. I appreciate it. Thank you, counsel. We will stand at recess until the readiness of the next case.